**Charlotte I. GAMBLE, etc., etc., et al., Plaintiffs-Appellants,**

v.

**The FLORIDA DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, et al., Defendants-Appellees.**

No. 84–3849.

United States Court of Appeals, Eleventh Circuit.

Jan. 14, 1986.

1510

Levine, Freedman, Hirsch & Levinson, Stevan T. Northcutt, Tampa, Fla., for plaintiffs-appellants.

Walter M. Meginniss, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for Florida Dept. of HRS.

Before HILL and ANDERSON, Circuit Judges, and GARZA*, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Appellant Charlotte Gamble, suing as next friend and on behalf of Cynthia Gamble, challenges the district court's dismissal of her complaint under 42 U.S.C.A. § 1983 against the Florida Department of Health and Rehabilitative Services ("HRS").[1] Gamble[2] claims that her rights under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments were violated as a result of alleged severe physical and mental mistreatment suffered at the hands of foster parents with whom Gamble was placed by HRS from May 24, 1967, through November 4, 1974. Gamble demanded compensatory and punitive damages, attorney's fees, and costs.

The district court dismissed Gamble's suit on the ground that the Eleventh Amendment barred Gamble's claim for damages against HRS, an agency of the state of Florida, thereby rejecting Gamble's argument that Florida has waived its immunity from suit in federal civil rights actions. Record at 83; *see Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

We agree with the district court that Florida has not waived its Eleventh Amendment immunity and that, therefore, HRS is not subject to suit in federal court in this action for damages. Therefore, we affirm.

A. *Legal Standards*

It is helpful to set out the complicated legal background of Eleventh Amendment doctrine against which the district court's decision must be judged.

■ The Eleventh Amendment reads as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This immunity extends beyond the words of the Eleventh Amendment itself, and includes suits such as the instant case in which a state is being sued by its own citizen. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

In the landmark case of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), however, a significant exception to Eleventh Amendment immunity was announced. *Young* allows a federal court plaintiff to enjoin unconstitutional state action by naming the responsible state officer in the complaint, and requesting that the officer be enjoined from further unconstitutional conduct. "This holding has permitted the Civil War Amendments to the Constitution to serve as a sword, rather than merely as a shield, for those whom they were designed to protect." *Edelman*, 415 U.S. at 664, 94 S.Ct. at 1356.

___

* Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Appellant also sued certain unknown agents of HRS and certain unknown former foster parents of Cynthia Gamble. The district court, in dismissing the case in its entirety, noted that dismissal as against defendants other than HRS was proper because no defendant other than HRS had been served. Appellant does not challenge on appeal this aspect of the district court's judgment.

2. As we have indicated, Charlotte Gamble is suing on behalf of her adopted daughter, Cynthia Gamble. The alleged unconstitutional acts were perpetrated upon Cynthia Gamble; the opinion's reference to "Gamble" refers to either or both as is appropriate in the context.

 The Supreme Court has held, however, that the rule of *Ex parte Young* applies only to prospective, as opposed to retroactive, relief. *Edelman*, 415 U.S. at 664, 94 S.Ct. at 1356. Generally speaking, then, this will bar damage awards against state officers sued in their official capacities in suits brought in federal court pursuant to 42 U.S.C.A. § 1983.[3] *Edelman* recognized that an award of damages against a state officer in an official capacity "will obviously not be paid out of the pocket of [the officer]," *Edelman*, 415 U.S. at 664, 94 S.Ct. at 1356, but rather will "inevitably come from the general revenues of the State," *id.* at 665, 94 S.Ct. at 1357, a result the Court found to be contrary to the purposes of the Eleventh Amendment. *Accord Cate v. Oldham*, 707 F.2d 1176, 1181 (11th Cir.1983). Despite this bar to damage suits against the states in federal court, there are two ways in which this immunity can be overcome. First, Congress may abrogate the state's immunity by explicit Congressional enactment through its legislative powers granted to it by the states in § 5 of the Fourteenth Amendment, *see Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49. L.Ed.2d 614 (1976) (Eleventh Amendment no bar to Congressional enactment authorizing damage awards against state governments for violation of Title VII of the Civil Rights Act of 1964), or perhaps through its other congressionally-mandated legislative powers. *See, e.g., Atascadero State Hospital v. Scanlon,* —— U.S. ——, ——–——, 105 S.Ct. 3142, 3147–50, 87 L.Ed.2d 171, 179–82 (1985); *Parden v. Terminal Railway of the Alabama State Docks Department,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) (concerning Congress' use of the commerce power in enacting the FELA). Because § 1983 itself has been held not to be a Congressional abrogation of the states' immunity from damage suits, *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman,* 415 U.S. at 674–77, 94 S.Ct. at 1361–63, there is no Congressional abrogation in the instant case.

 Second, the state itself may waive its Eleventh Amendment immunity and, thereby, consent to suit in federal court. This type of waiver cannot easily be inferred from state legislative action. As the *Edelman* Court put it:

> In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction."

*Id.* at 673, 94 S.Ct. at 1360 (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)); *see also Atascadero State Hospital,* —— U.S. at ——, 105 S.Ct. at 3146, 87 L.Ed.2d at 178; *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Ass'n,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (per curiam).

 Furthermore, a state officer may also be sued in an individual or personal capacity. "Personal-capacity suits seek to impose personal liability upon a governmental official for actions he takes under color of state law." *Kentucky v. Graham,* —— U.S. ——, ——, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114, 121 (1985). As opposed to suits in which the defendant is the state, one of the state's agencies, or a responsible state officer sued in an official capacity, the Eleventh Amendment provides no bar to federal court adjudication of suits

---

**3.** The rules are different in § 1983 actions against municipalities and their officers. A municipality may be sued directly, without the necessity of naming an officer, and damages may be awarded against the municipality as an entity. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (overruling in part *Monroe v. Pape,* 365 U.S. 167, 187–92, 81 S.Ct. 473, 484–87, 5 L.Ed.2d 492 (1961)); *see also Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

against state officers individually. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).[4] Whether a state officer is being sued for damages in an official or an individual capacity is not mere semantics; the question is whether the plaintiff is reasonably seeking relief from the state coffers or from the individual's assets.[5] *See generally Brandon v. Holt*, 469 U.S. ——, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Scheuer*, 416 U.S. at 238, 94 S.Ct. at 1687. If, as was the case in *Edelman*, the damage award was obviously sought from the state treasury, the suit will be deemed to be one against the officer in an official capacity, and the Eleventh Amendment will therefore preclude such relief. *Edelman*, 415 U.S. at 664–65, 94 S.Ct. at 1356–57 (Eleventh Amendment bars suit against state welfare official for retroactive benefits wrongfully withheld); *see also Brandon v. Holt*, 469 U.S. at ——–——, 105 S.Ct. at 877–79, 83 L.Ed.2d at 884–86. If, however, the plaintiff seeks damages from the state officer personally for redress of that officer's particular unconstitutional acts, "[a]n award of damages against ... [that] official in his personal capacity can be executed only against the official's personal assets." *Kentucky v. Graham*, —— U.S. at ——, 105 S.Ct. at 3105, 87 L.Ed.2d at 121; *see also Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473 (officers' unconstitutional search and seizure).

With these principles in mind, we proceed to apply them to the facts of the instant case. Because it is clear that there has been no congressional waiver of the states' immunity in this case, *Quern v. Jordan, supra*, we address only the claim that the State of Florida has waived its immunity.

### B. Has Florida Waived its Eleventh Amendment Immunity to Suit in Federal Court?

In dismissing the instant case, the district court relied on *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Ass'n*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (per curiam). In *Florida Nursing Home*, the Supreme Court held that HRS had not waived its Eleventh Amendment immunity to suit in federal court by virtue of a general waiver of sovereign immunity which stated that HRS was a "body corporate" with a capacity to "sue and be sued." *Id.* at 149, 101 S.Ct. at 1033; *see also Atascadero State Hospital*, —— U.S. at ——, 105 S.Ct. at 3147, 87 L.Ed.2d at 179 (California's constitutional provision that "[s]uits may be brought against the State in such manner and in such courts as shall be directed by law" does not waive Eleventh Amendment immunity); *Tuveson v. Florida Governor's Council on Indian Affairs, Inc.*, 734 F.2d 730, 734 (11th Cir. 1984) (statute which provided that non-profit corporation can "[s]ue and be sued ... to the same extent as a natural person" did not constitute waiver of Eleventh Amendment immunity).

Gamble argues, however, that other, more specific, statutory provisions indicate that Florida has waived its sovereign immunity to § 1983 actions in federal court. Gamble first points to Fla.Stat.Ann. § 768.28 (West Supp.1985), the statutory enactment which represents a limited waiver of Florida's sovereign immunity in tort actions. Section 768.28 authorizes recovery of tort damages against Florida or any of its agencies or subdivisions for "negli-

---

4. The Supreme Court has developed, however, certain personal immunity doctrines which can be asserted by governmental actors as defenses against personal liability in § 1983 actions. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (qualified "good faith" immunity for state officers).

5. As we have indicated, unless Congress has abrogated the state's Eleventh Amendment immunity or the state has consented to suit, the only way in which the plaintiff can recover damages is by suing the officer individually. *See Kentucky v. Graham*, —— U.S. ——, ——–——, 105 S.Ct. 3099, 3107–08, 87 L.Ed.2d 114, 123–24 (1985).

gent or wrongful acts of any [state] employee while acting within the scope of his office or employment." Fla.Stat.Ann. § 768.28(1). The statute reads in relevant part as follows:

**Waiver of sovereign immunity in tort actions; recovery limits; limitation on attorney fees; statute of limitations; exclusions**

(1) In accordance with s. 13, Art. X, State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act. Any such action may be brought in the county where the property in litigation is located or, if the affected agency or subdivision has an office in such county for the transaction of its customary business, where the cause of action accrued....

(3) Except for a municipality, the affected agency or subdivision may, at its discretion, request the assistance of the Department of Insurance in the consideration, adjustment, and settlement of any claim under this act....

(5) The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include pu-

nitive damages or interest for the period before judgment. Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,-000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000. However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $100,000 or $200,000, as the case may be; and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature. The limitations of liability set forth in this subsection shall apply to the state and its agencies and subdivisions whether or not the state or its agencies or subdivisions possessed sovereign immunity before July 1, 1974....

(9)(a) No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property....

(13) The state and its agencies and subdivisions are authorized to be self-insured, to enter into risk management programs, or to purchase liability insurance for whatever coverage they may choose, or to have any combination thereof, in anticipation of any claim, judgment, and claims bill which they may be liable to pay pursuant to this section.

We believe that the above-quoted statutory provisions represent only a limited ab-

rogation of Florida's immunity; the waiver is limited to traditional torts, i.e., to circumstances in which the state would be liable if it were a private person. The waiver does not constitute consent to suit in federal court under § 1983. By declaring that "[t]he state and its agencies [6] and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances," Fla.Stat.Ann. § 768.28(5); *accord* Fla. Stat.Ann. § 768.28(1), the Florida legislature gave a strong indication that it did not intend to waive its immunity to civil rights actions. HRS argues persuasively that, by analogizing to suits against a "private individual," the legislature intended to create sovereign liability for acts or omissions solely within the scope of traditional tort law. Moreover, the statute provides that the state or its agencies may be held liable "in accordance with the general laws of this state." Fla.Stat.Ann. § 768.28(1). This is an explicit indication that the substantive law governing actions under

§ 768.28 is state law, not federal law as is the case in an action brought pursuant to § 1983. *See Atascadero State Hospital v. Scanlon,* —— U.S. at ——, 105 S.Ct. at 3147, 87 L.Ed.2d at 179 ("in order for a state statute ... to constitute a waiver of Eleventh Amendment immunity, it must specify the state's intention to subject itself to suit in *federal court* ") (emphasis in original). Finally, we note that the statute consistently refers to "tort action," persons "liable in tort," and the like without any mention that such terms include federal civil rights actions. We agree with HRS, therefore, that § 768.28, when viewed alone, was intended to render the state and its agencies liable for damages for traditional torts under state law, but to exclude such liability for "constitutional torts." *Accord Shinholster v. Graham,* 527 F.Supp. 1318, 1332–33 (N.D.Fla.1981).[7] Section 768.28 does not provide the express language or the overwhelming implications of waiver necessary to override Florida's Eleventh Amendment immunity.[8] *See*

**6.** It is not disputed, nor could it be, that HRS is a state agency within the meaning of § 768.28, and is the equivalent of the State of Florida for Eleventh Amendment purposes. *See Florida Dep't. of Health & Rehabilitative Services v. Florida Nursing Home Ass'n,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (per curiam); *Tuveson v. Florida Governor's Council on Indian Affairs, Inc.,* 734 F.2d 730, 732–34 (11th Cir.1984).

**7.** *Shinholster* considered the same statutory enactments which we are considering in this opinion, and similarly rejected a claim that Florida had waived its immunity to § 1983 damage suits in federal court. This conclusion was also reached by the United States District Court for the Middle District of Florida in *Ostroff v. Florida Dep't. of Health & Rehabilitative Services,* 554 F.Supp. 347, 355–56 (M.D.Fla.1983), and by all three federal judicial districts of Florida in unpublished opinions. A contrary result—holding that the statutory enactments considered in this opinion had waived Florida's immunity to damage suits under § 1983 in federal court— was reached in *Meeker v. Addison,* 586 F.Supp. 216, 218–22, 224 (S.D.Fla.1984). On the motion of Meeker, that case was remanded to the district court to permit that court to rule on Meeker's motion for voluntary dismissal. We reject the reasoning of the *Meeker* opinion for the reasons set out in this opinion.

**8.** HRS urges us to consider Fla.Stat.Ann. § 768.-28(15) (West Supp.1985) which states:

(15) No provision of this section, or of any other section of the Florida Statutes, whether read separately or in conjunction with any other provision, shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court. This subsection shall not be construed to mean that the state has at any time previously waived, by implication, its immunity, or that of any of its agencies, from suit in federal court through any statute in existence prior to June 24, 1984.

This provision, which likely was enacted in response to the *Meeker* case, *see supra* note 7, conclusively indicates that § 768.28 is not currently a waiver of Florida's Eleventh Amendment immunity to suit in federal court. However, § 768.28(15) did not become effective until June 24, 1984, well after Gamble filed her complaint. HRS argues nevertheless that § 768.-28(15) signifies that Florida never consented to suit in federal court at any time prior to June 24, 1984. We need not consider the effect of this provision, if any, on the dispute in this case, since our analysis of the other relevant statutory

*Edelman v. Jordan,* 415 U.S. at 673, 94 S.Ct. at 1360.

■ Gamble urges us to consider two other statutory schemes which, she argues, unmistakably indicate, when read in conjunction with § 768.28, that the waiver of sovereign immunity in § 768.28 includes damage actions against the state and its agencies under § 1983. First, Gamble directs the court to the Florida Casualty Insurance Risk Management Trust Fund Statute, Fla.Stat.Ann. § 284.30, *et seq.* (West Supp.1985). This statute provides:

> A state self-insurance fund, designated as the "Florida Casualty Insurance Risk Management Trust Fund," is created to be set up by the Department of Insurance and administered with a program of risk management, which fund is to provide insurance, as authorized by s. 284.33, for workers' compensation, general liability, fleet automotive liability, *federal civil rights actions under 42 U.S.C. s. 1983 or similar federal statutes, and court-awarded attorney's fees in other proceedings against the state....* A party to a suit in any court, to be entitled to have his attorney's fees paid by the state or any of its agencies, must serve a copy of the pleading claiming the fees on the Department of Insurance; and thereafter the department shall be entitled to participate with the agency in the defense of the suit and any appeal thereof with respect to such fees.

Fla.Stat.Ann. § 284.30 (emphasis added). The statute further provides:

> The insurance risk management trust fund shall, unless specifically excluded by the Department of Insurance, cover all departments of the State of Florida and their employees, agents, and volunteers and shall provide separate accounts for workers' compensation, general liability, fleet automotive liability, *fed-*

*eral civil rights actions under 42 U.S.C. s. 1983 or similar federal statutes,* and court-awarded attorney's fees in other proceedings against the state....

Fla.Stat.Ann. § 284.31 (emphasis added).

Section 284.30 provides insurance in federal civil rights actions against the state. At first blush, this might appear to be an indication that Florida has indeed waived its Eleventh Amendment immunity in civil rights actions when it waived its state common law immunity to tort actions under § 768.28. However, by its words § 284.30 does no more than provide insurance to the extent that the state or its agencies might be liable in a § 1983 action. For example, as we have indicated in Part A., *supra,* under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441 (1908), a § 1983 plaintiff may enjoin unconstitutional state action if the responsible state agents are sued in their official capacities. As the court in *Edelman v. Jordan* recognized, such prospective injunctive relief against state officers may ultimately require the expenditure of state funds to implement the court ordered remedy. *Edelman,* 415 U.S. at 667–68, 94 S.Ct. at 1357–58 ("But the fiscal consequences to state treasuries in these [injunctive relief] cases were the necessary result of compliance with decrees which by their terms were prospective in nature.... Such an ancillary effect on the state treasury is a permissible and often inevitable consequence of the principle announced in *Ex parte Young....*"). Section 284.30 would provide insurance to state agencies for the cost of the implementation of such prospective relief.

Similarly, the insurance provided for the payment of attorney's fees is consistent with current Eleventh Amendment jurisprudence. In *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), the Supreme Court held that the Civil Rights Attorney's Fees Award Act of 1976,

materials leads us to conclude that Florida has not waived its Eleventh Amendment immunity

in any event.

42 U.S.C.A. § 1988, was a congressional abrogation of the state's Eleventh Amendment immunity with respect to the payment of attorney's fees in civil rights actions. Thus, there is no Eleventh Amendment bar to the assessment of attorney's fees against the state or its agencies.[9]

Section 284.31, quoted above, merely reiterates the insurance coverage in federal civil rights actions and court-awarded attorney's fees provided in § 284.30, and further provides that the insurance risk management fund account for these coverages separately. As we have indicated above, these sections are consistent with Eleventh Amendment jurisprudence, in that they provide insurance to state agencies for the cost of court-ordered prospective relief and attorney's fees. While these statutory provisions do not explicitly earmark the insurance for the costs of prospective relief, to the exclusion of retrospective damage relief against the state or its agencies, there certainly is no "overwhelming implication[ ] from the text as ... [would] leave no room for any other reasonable construction," *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1360, that the state has waived its Eleventh Amendment immunity to damage actions.

There is, however, a section of the risk management trust fund statute which does explicitly provide for the payment of damage awards. This section provides:

**Waiver of sovereign immunity; effect.**

The insurance programs developed herein shall provide limits as established by the provisions of s. 768.28 if a tort claim. *The limits provided in s. 768.28 shall not apply to a civil rights action under 42 U.S.C. s. 1983 or similar federal statute.* Payment of a pending or future claim or judgment arising under any of said statutes may be made upon this act becoming a law, unless the offi-

cer, employee, or agent has been determined in the final judgment to have caused the harm intentionally; however, the fund is authorized to pay all other court-ordered attorney's fees as provided under s. 284.31.

Fla.Stat.Ann. § 284.38 (emphasis added). This section carries forward the distinction, strongly delineated in the statute providing the state's limited waiver of sovereign immunity (§ 768.28), between ordinary state tort claims, and constitutional and other federal civil rights claims. It states that the insurance programs developed under the Florida Casualty Insurance Risk Management Trust Fund are not to be construed to abrogate the monetary limits set in § 768.28. Moreover, the section explicitly states that the limits of § 768.28 "shall not apply to a federal civil rights action," leaving the implication that § 768.28, while waiving traditional state common law tort immunity, simply has no application to civil rights actions. *See Shinholster*, 527 F.Supp. at 1334.

However, Gamble points to the unmistakable intent of this section to provide insurance for damage claims. We agree that this section may well provide insurance for damage claims because it refers to "[p]ayment of a pending or future claim or judgment." Thus, the statute is less likely to be referring merely to funding the cost of prospective relief against officers and employees in their official capacities. Moreover, its reference to "any of said statutes" refers to § 1983 actions, as well as actions brought under § 768.28. Thus, Gamble maintains, it would be meaningless to provide insurance coverage for such damage claims, if the state did not intend to waive its Eleventh Amendment immunity to such claims. Although this argument has some appeal, we believe that this section provides insurance for damage judgments

---

**9.** As we have indicated, technically the assessment of attorney's fees, consistent with the concomitant court ordered prospective relief, would run against the state officers in their official capacities. However, as with the cost of implementing any injunctive relief ordered, the attorney's fees would obviously be paid from the state treasury. *See Kentucky v. Graham*, —— U.S. ——, —— – ——, 105 S.Ct. 3099, 3105–07, 87 L.Ed.2d 114, 121–23 (1985).

against state officers when sued in their *individual* capacities. This reading is supported by the fact that the section does not refer to the state or its agencies, but rather refers to state officers, employees, or agents. As we have indicated in Part A., *supra*, the Eleventh Amendment provides no bar to recovery of damages against state officers acting in their individual capacities. *Cf. Kentucky v. Graham*, —— U.S. at ——, 105 S.Ct. at 3106, 87 L.Ed.2d at 122 ("On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right") (emphasis in original). Thus, the most reasonable reading of § 284.38 is that the state, through its risk management fund, will indemnify its officers, employees, or agents in § 1983 personal liability damage actions if they have not acted intentionally, *i.e.*, in bad faith.[10] The distinction drawn between tort actions and civil rights actions serves both to reiterate the strong distinction drawn in § 768.28, and to indicate that the monetary limits set out in § 768.28 should not limit the amount of insurance payable to officers, employees, or agents held liable for damages in their personal capacities under § 1983.[11] In any event, there is surely no overwhelming implication from the text of § 284.38 that the state intended to waive its Eleventh Amendment immunity from damage actions.

■ Gamble also directs this court to Chapter 111 of the Florida Statutes which permits state agencies to defend actions against public officers. Section 111.07 provides:

**Defense of civil actions against public officers, employees, or agents**

Any agency of the state, or any county, municipality, or political subdivision of the state, is authorized to provide an attorney to defend any civil action arising from a complaint for damages or injury suffered as a result of any act or omission of action of any of its officers, employees, or agents for an act or omission arising out of and in the scope of his employment or function, unless, in the case of a tort action, the officer, employee, or agent acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Defense of such civil action includes, but is not limited to, any civil rights lawsuit seeking relief personally against the officer, employee, or agent for an act or omission under color of state law, custom, or usage, wherein it is alleged that such officer, employee, or agent has deprived another person of his rights secured under the Federal Constitution or laws. Legal representation of an officer, employee, or agent of a state agency may be provided by the Department of Legal Affairs. However, any attorney's fees paid from public funds for any officer, employee, or agent who is found to be personally liable by virtue of acting outside the scope of his employment, or was acting in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, may be recovered by the state, county, municipality, or political subdivision in a civil action against such officer, employee, or agent. If any agency of the state or any county, municipality, or political subdivision of the state is authorized pursuant to this section to provide an attorney to defend a civil action arising from a complaint for damages or injury suffered as a result of any act or omission of action of any of its

---

10. *Cf. Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (state officers have a common law "good faith" immunity from personal liability in damage actions under § 1983).

11. This is simply a recognition that the state of Florida may not limit the damages available under § 1983 which, of course, is a matter of federal law. *Cf. Oklahoma City v. Tuttle,* 471 U.S. ——, ——, 105 S.Ct. 2427, 2447, 85 L.Ed.2d 791, 817 (1985) (Stevens, J., dissenting).

officers, employees, or agents and fails to provide such attorney, such agency, county, municipality, or political subdivision shall reimburse any such defendant who prevails in the action for court costs and reasonable attorney's fees.

Fla.Stat.Ann. § 111.07 (West Supp.1985). Gamble again argues that this statute, because it envisions public defense of individual state officers in damage actions, indicates that Florida's waiver of sovereign immunity under § 768.28 includes a waiver of Eleventh Amendment immunity in § 1983 damage actions. We reject this argument for the reasons stated above in our discussion of Chapter 284. Section 111.07 indicates that the state may provide a defense in "any civil rights lawsuit seeking relief *personally* against the officer, employee, or agent for an act or omission under color of state law, custom, or usage, wherein it is alleged that such officer, employee, or agent has deprived another person of his rights secured under the Federal Constitution or laws." Fla.Stat.Ann. § 111.07 (emphasis added). By using the term "personally," Chapter 111 is even more explicit than Chapter 284 in its reference to § 1983 suits against state officers in their personal capacities, suits which are unaffected by the state's Eleventh Amendment immunity. In addition, § 111.07 indicates that attorney's fees awards against state officers will be reimbursed by the state agency. *See Hutto v. Finney,* 437 U.S. at 693–700, 98 S.Ct. at 2574–2579 (attorney's fees award against officer sued in official capacity will be paid by state). *Compare Kentucky v. Graham,* —— U.S. ——, 105 S.Ct. 3099, 87 L.Ed.2d 114 (in civil rights action against state officer in personal capacity, attorney's fee award under 42 U.S.C.A. § 1988 runs to the officer individually and not to the state). Thus, § 111.07 merely reflects a scheme of defending and reimbursing state officers which is consistent with current jurisprudence under § 1983 and the Eleventh Amendment.

Our analysis is similar with respect to § 111.071 which provides for state payment of damage judgments against public officers whose agencies are not included within the insurance risk management trust fund scheme set out in Chapter 284. Section 111.071 provides in relevant part:

(1) Any county, municipality, political subdivision, or agency of the state which has been excluded from participation in the Insurance Risk Management Trust Fund is authorized to expend available funds to pay:

(a) Any final judgment, including damages, costs, and attorney's fees, arising from a complaint for damages or injury suffered as a result of any act or omission of action of any officer, employee, or agent in a civil or civil rights lawsuit described in s. 111.07. If the civil action arises under s. 768.28 as a tort claim, the limitations and provisions of s. 768.28 governing payment shall apply. If the action is a civil rights action arising under 42 U.S.C. s. 1983, or similar federal statutes, payments for the full amount of the judgment may be made unless the officer, employee, or agent has been determined in the final judgment to have caused the harm intentionally....

(4) This section is not intended to be a waiver of sovereign immunity or a waiver of any other defense or immunity to such lawsuits.

Fla.Stat.Ann. § 111.071 (West 1982). Subsection (1)(a) is the functional equivalent of § 284.38 discussed above. It authorizes the payment of damages in civil rights actions to "any officer, employee, or agent" of the state, strongly indicating that the legislature intended to indemnify state officers only when sued in their personal capacities. Moreover, the distinction between ordinary tort actions under § 768.28 and civil rights actions is maintained, further indicating that § 768.28 was not intended as a waiver of Florida's Eleventh Amendment immunity. Finally, and most importantly, subsection (4) explicitly states that no waiver of sovereign immunity is intended. This is a clear indication that Chapter

111 was not intended to expand the limited waiver of sovereign immunity set out in § 768.28.[12]

## CONCLUSION

In light of the foregoing, we hold that Florida has not waived its Eleventh Amendment sovereign immunity. Therefore, the decision of the district court, dismissing Gamble's complaint for lack of jurisdiction, is

AFFIRMED.

12. We reject the court's conclusion in *Meeker* "that § 111.07(4) is a savings clause reserving any or all defenses still available to the State after waiver or consent or other concession has been given." *Meeker v. Addison,* 586 F.Supp. at 220 n. 3. We reject *Meeker*'s conclusion because, as indicated in the text *supra,* no waiver of Florida's Eleventh Amendment immunity has otherwise been given.