**Thomas A. SCHOPLER, D.D.S.,**
**Plaintiff–Appellee,**

v.

**Rupert BLISS, et al.,**
**Defendants–Appellants.**

No. 88–5609.

United States Court of Appeals,
Eleventh Circuit.

June 22, 1990.

Salvatore A. Carpino, Tampa, Fla. and Arden Siegendorf, Moffitt, Hart & Herron, P.A., Tallahassee, Fla., for Rupert Bliss, et al.

Thomas J. Schopler, Dania, Fla., Daniel J. Lewis, Tamarac, Fla., and Steven I. Kern, and Robert J. Conroy, Kern & Augustine, Morristown, N.J., for plaintiff-appellee.

Before VANCE[*] and COX, Circuit Judges, and EDENFIELD[**], District Judge.

PER CURIAM:

The Florida Department of Professional Regulation, its Board of Dentistry, and ten individuals moved to dismiss this action against them claiming immunity from suit as a matter of law. The district court denied their motion and they now appeal. This court has jurisdiction under the collateral order doctrine for the limited purpose of determining whether the defendants must stand trial. Because Florida has not waived its Eleventh Amendment immunity from suit in federal court, we reverse in part and order that the actions against the Department of Professional Regulation and the Board of Dentistry be dismissed. The ten individual appellants, however, are not immune from all claims as a matter of law, and so we affirm the portion of the district court's order denying the comprehensive claims of immunity raised by these ten appellants.

## I. BACKGROUND

Because appellants seek to have this action dismissed without an evidentiary hearing, we must assume that the plaintiff would prove the allegations set forth in the complaint if a trial were held. The plaintiff, Thomas A. Schopler, D.D.S., has been practicing dentistry in Broward County, Florida since 1971. In 1977, Dr. Schopler began offering a prepaid dental program to his patients and started advertising both on radio and in newspapers. Dr. Schopler adopted these practices as part of a plan to treat a high volume of patients at a low cost per patient.

The Florida Department of Professional Regulation (hereinafter "the DPR") is a department within the executive branch of the State of Florida empowered to license and regulate the practice of various professions within the state. Fla.Stat. §§ 455.01, 455.203. The Florida Board of Dentistry (hereinafter "the Board") is a board within the DPR charged with ensuring that "every dentist ... practicing in this state meets minimum requirements for safe practice." Fla.Stat. §§ 466.001, 466.004. Among other things, the Board is authorized to promulgate rules governing advertising by dentists. Fla.Stat. § 466.019. When the DPR receives a legally sufficient complaint against a dentist, the Board is required to assemble a "probable cause panel" of its members to determine whether a formal complaint should be lodged against the practitioner. Fla.Stat. § 455.225(3). If formal charges are brought, the Board as a whole (excluding those members who sat on the probable cause panel) then decides whether disciplinary action shall be taken and issues a final order. Fla.Stat. § 455.225(5).

Defendant Rupert Q. Bliss, D.D.S., is a Florida dentist and was a member of the Board until 1984. The essence of Dr. Schopler's complaint is that Dr. Bliss engaged in a course of conduct designed to prevent Florida dentists from advertising and engaging in high-volume dental practice, in order to protect the financial interests of those such as Dr. Bliss who operated "tra-

[*] Judge Robert S. Vance was a member of the panel which heard oral argument but due to his death on December 16, 1989, did not participate in this decision. This case is decided by a quorum. *See* 28 U.S.C. § 46(d).

[**] Honorable B. Avant Edenfield, U.S. District Judge for the Southern District of Georgia, sitting by designation.

ditional, low-volume dental offices." Dr. Schopler alleges that eight other Board members and a DPR investigator knew about and gave their approval to Dr. Bliss's conduct and conspired with him. Five of these Board members were dentists, all of whom are said to have practiced in a "traditional" manner.

Specifically, Dr. Schopler alleges that for a significant time the composition of the probable cause panels was rigged and manipulated. During this period, the Board allegedly threatened and instituted formal charges against virtually every dentist in the State of Florida who engaged in substantial advertising. Dr. Schopler alleges that the Board levied multiple, unfounded charges of incompetence against him in order to intimidate him. Four separate administrative complaints were filed and then dropped immediately prior to a full hearing, forcing Dr. Schopler to incur the costs of defense while avoiding a hearing on the record that would have revealed that the charges were baseless.

Dr. Schopler also claims that his associates and employees were threatened and harassed causing him to lose valuable assistance. Dr. Schopler's patients were allegedly discouraged from using his prepaid dental plan and were encouraged to file complaints and lawsuits against Dr. Schopler. Local dentists were told that Dr. Schopler was incompetent and was engaged in illegal activity, and editorials were published indicating that dentists who advertised were unethical and unskilled.

Dr. Schopler brought this suit in 1982 against the DPR, a DPR investigator, the Board[1], Dr. Bliss, eight other Board members, and others who are not parties in this appeal. Three of the Board members were named in their official capacities only; the rest of the individual defendants were sued in both their official and individual capacities. Dr. Schopler claimed violation of his First, Fifth and Fourteenth Amendment rights, actionable under 42 U.S.C. § 1983. Dr. Schopler also alleged violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961–1968, and section one of the Sherman Anti-Trust Act, 15 U.S.C. § 1. Under Florida law, Dr. Schopler claimed defamation, intentional interference with business, and violation of the Florida Anti-Trust Act of 1980, Fla.Stat. §§ 542.15–542.36. Dr. Schopler demanded injunctive relief against all defendants and money damages against all defendants except the DPR.

The appellants moved to dismiss the complaint, claiming among other things that the suit was barred by the Eleventh Amendment and by the doctrines of quasi-judicial immunity, quasi-legislative immunity, and qualified immunity. The district court denied the appellants' motion in its Omnibus Order dated June 3, 1988, and this appeal ensued.[2]

## II. JURISDICTION

Initially we must determine the extent of our jurisdiction to decide this appeal. Our power to review district court orders is generally limited to final decisions; interlocutory orders may be appealed only under special circumstances not

---

1. In his brief, Dr. Schopler contends that the Board was not named as a party in his complaint. It is true that the Board was not listed in the complaint's caption, but the caption is not controlling in determining the parties. *Greenwood v. Ross*, 778 F.2d 448, 452 (8th Cir.1985); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1321 & n. 6 (1969 & Supp.1989). Dr. Schopler's complaint may fairly be read to state a claim against the Board (since each individual Board member was sued in his or her official capacity), and the Board was served with process which ordered it to answer the complaint. In response, the Board joined with other defendants in filing a motion to dismiss the action. When that motion was denied, the Board again joined other defendants in filing a

notice of appeal. Dr. Schopler apparently did not object to the Board's inclusion in any of these filings. Because the Board has been treated and has acted as a defendant throughout the proceedings, we deem the Board to be a defendant-appellant in this action.

2. In its Omnibus Order, the district court did not set forth its reasons for denying appellants' claims of immunity, presumably because it had already addressed the immunity issue in an earlier discovery-related order dated May 24, 1988. For purposes of this appeal, we assume that the Omnibus Order was predicated on the reasoning of the May 24th order.

applicable here. 28 U.S.C. §§ 1291, 1292. An order may be considered "final" for purposes of section 1291, however, even though it is not a final judgment and does not resolve the ultimate issues raised in the complaint. Under the collateral order doctrine, an order that conclusively decides a claim of right that is separable from the principal action may be deemed "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949). *See generally* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3911 (1976 & Supp.1989).

In *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985), the Supreme Court held that the denial of a motion for summary judgment based on qualified immunity is a collateral order under *Cohen* and may be immediately appealed. The Court's decision rested on the premise that immunity from suit protects public officials not only from the burden of liability, but also from the burden of litigation. 472 U.S. at 526, 105 S.Ct. at 2815–16. *See also id.* at 537, 105 S.Ct. at 2821 (O'Connor, J., concurring) ("[T]he special nature of [official immunity] justifies immediate review. The very purpose of such immunit[y] is to protect the defendant from the burdens of trial...."). This immunity "is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526, 105 S.Ct. at 2815. For all practical purposes, then, a pretrial order rejecting a claim of immunity is a final determination of the claimant's right not to stand trial. Such rulings are appealable collateral orders, regardless of whether the immunity being claimed is qualified or absolute. *Id.* at 525, 530, 105 S.Ct. at 2814–15, 2817–18.

It is apparent from the Court's reasoning in *Mitchell* that government officials are afforded pretrial appellate review of their immunity claims for the limited purpose of determining whether they are entitled to avoid further litigation. If we conclude that a defendant is not altogether immune or that some portion of the defendant's immunity claim cannot be resolved without a trial, then presumably there is no reason to consider the appeal further, since any additional review would be purely interlocutory. *Green v. Brantley*, 11th Cir.1990, 895 F.2d 1387. In *Green*, this court held that it lacked jurisdiction to consider the defendants' claim of qualified immunity from one cause of action for damages when the defendants would in any event be subject to trial for damages on another cause of action arising from the same events. The court refused to consider the appellants' request for partial relief because such relief would not be meaningful enough to justify interrupting the lower court proceedings. By recognizing the limited scope of our authority to hear this type of appeal, we have remained true to the purposes served by the Court's holding in *Mitchell* without losing sight of the equally salutary reasons for withholding full appellate review until a final judgment is entered. *Id.*, 895 F.2d at 1393.

■ This court has recognized one exception to the general rule against piecemeal appellate adjudication of pretrial immunity claims. When a government official is denied immunity from a lawsuit in which the plaintiff seeks both money damages and injunctive relief, the official may separately appeal the denial of immunity from personal liability for money damages, without claiming immunity from injunctive relief. *Marx v. Gumbinner*, 855 F.2d 783, 787–88 (11th Cir.1988). As the court noted in *Marx*, the threat of personal liability is qualitatively different from the danger of being enjoined in an official capacity. *Id.* The mere possibility of a judgment against an official's personal assets would chill the exercise of discretionary authority in a way that a suit for equitable relief would not. Thus, "even if the defendant will be subject to suit on a claim for injunctive relief, the policy reasons for according the government official immunity to suit for money damages—and hence the reasons for allowing an immediate appeal if that immunity is denied—remain." *Id.* at 788. Accordingly, we must independently review the separate

parts of a government official's assertion of immunity from personal liability.

 In the case before us, Dr. Schopler has sued the defendants for numerous acts which he contends constitute a single course of conduct. The complaint purports to state six causes of action (three each under federal and state law) and seeks both money damages and injunctive relief. *Marx* requires that we consider the appellants' immunity from money damages even if appellants are not immune from an action for injunctive relief. We see no reason to subdivide our inquiry further, however. Appellants contend that they are immune from liability under all six legal theories; they do not attempt to argue, as did the defendants in *Green,* that their immunity from one cause of action is "separable" from the others for purposes of appellate review. Nor have appellants suggested, as in *Marx,* any reason why a trial on some of their alleged actions would be significantly more burdensome than a trial on others, warranting piecemeal review of their immunity claims. Applying *Green* and *Marx,* then, we conclude that this court lacks jurisdiction to review any claims of partial immunity, except to distinguish between immunity from money damages and immunity from injunctive relief. If we find that appellants must stand trial for at least some of their alleged misdeeds under at least one cause of action for damages, then the reasons for allowing an immediate appeal disappear, and we must dismiss the appeal of the order rejecting claims of immunity for lack of appellate jurisdiction.

In sum, then, this court has jurisdiction under the collateral order doctrine to determine whether the appellants must stand trial. We shall consider the appellants' immunity from monetary liability even if they are not immune from injunctive relief. At this stage in the litigation, however, we do not have jurisdiction to consider appellants' claims of partial immunity.

---

**3.** A state is liable for money judgments against officers who are sued in their official capacity. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985). It follows, then, that such actions are in effect actions against the state, and thus are barred by the

## III. IMMUNITY FROM SUIT

### A. The DPR and the Board

 The Eleventh Amendment prohibits federal courts from exercising subject matter jurisdiction in suits brought against a state by a citizen of that state. *Welch v. State Dept. of Highways and Public Transportation,* 483 U.S. 468, 472, 107 S.Ct. 2941, 2945, 97 L.Ed.2d 389 (1985); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The amendment applies even when a state is not named as a party of record, if for all practical purposes the action is against the state. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101–02, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974); *Ex parte New York,* 256 U.S. 490, 500, 41 S.Ct. 588, 590–91, 65 L.Ed. 1057 (1920). Thus, the Eleventh Amendment extends to state agencies and other arms of the state, but it does not reach lawsuits against municipalities and other discreet political subdivisions that are sufficiently independent from the state. *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977); *Brown v. East Central Health Dist.,* 752 F.2d 615, 617 (11th Cir. 1985).

The district court considered this lawsuit to be an action brought exclusively against government officials, and not an action against the State of Florida. We cannot agree. The complaint states claims against both the DPR and the Board and seeks injunctive relief against them. The complaint also seeks damages from the individual Board Members in their official capacities.[3] The DPR and the Board are state agencies; they are not entities independent and separate from the state. *See* Fla.Stat. §§ 20.30, 455.01; *Tuveson v. Fla. Governor's Council on Indian Affairs,* 734 F.2d

---

Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985); *Gamble v. Fla. Dept. of Health and Rehabilitative Services,* 779 F.2d 1509, 1512–13 (11th Cir.1986).

730, 732–33 (11th Cir.1984). To the extent that the DPR and the Board are defendants, then, this is an action against the State of Florida. Accordingly, the DPR and the Board are immune from suit under the Eleventh Amendment unless their immunity is either waived by the state or abrogated by Congress.[4] *Gamble v. Fla. Dept. of Health and Rehabilitative Services,* 779 F.2d 1509, 1511 (11th Cir.1986) (citing *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)).

 The district court held that, even if this was an action against the state, Florida waived its Eleventh Amendment immunity in adopting Fla.Stat. § 768.28. Section 768.28 expressly waives Florida's sovereign immunity from tort actions brought in its own courts, with certain limitations. In order to constitute waiver of Eleventh Amendment immunity from suit in federal court, however, a state statute must employ language that is either explicit or else admits of no other reasonable interpretation. *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1360–61; *Gamble,* 779 F.2d at 1512. Evidence that a state has waived sovereign immunity in its own courts is not by itself sufficient to establish waiver of Eleventh Amendment immunity from suit in federal court. *Florida Dept. of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034–35, 67 L.Ed.2d 132 (1981); *Tuveson,* 734 F.2d at 734. This court has held that section 768.28 does not waive Florida's Eleventh Amendment immunity. *Hamm v. Powell,* 874 F.2d 766, 770 n. 3

(11th Cir.1989); *Gamble,* 779 F.2d 1509. *Accord Hill v. Dept. of Corrections,* 513 So.2d 129, 133 (Fla.1987). To the contrary, subsection 768.28(16) declares the legislature's intention that Florida statutes not be construed to waive Eleventh Amendment immunity unless they explicitly waive immunity from suit *in federal court.*[5] Nothing else in section 768.28 refers to actions brought in federal court. Consequently, the district court erred in interpreting section 768.28 as a statutory waiver of Eleventh Amendment immunity. We conclude that immunity from suit has not been waived, and that the DPR and the Board are entitled to that absolute immunity. Accordingly, their motions to dismiss should have been granted.

## B. The Individual Appellants

 Independent of any immunity afforded by the Eleventh Amendment, the common law tradition of sovereign immunity provides state officials with varying degrees of protection from personal liability for their official acts. *Nixon v. Fitzgerald,* 457 U.S. 731, 744–48, 102 S.Ct. 2690, 2698–2700, 73 L.Ed.2d 349 (1982); *Scheuer v. Rhodes,* 416 U.S. 232, 247, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974). Generally, state executive officers receive only qualified immunity. *Nixon,* 457 U.S. at 746, 102 S.Ct. at 2699; *Scheuer,* 416 U.S. at 247, 94 S.Ct. at 1692. There are some officials, however, whose special responsibilities require absolute immunity from liability. *Butz v. Economou,* 438 U.S. 478, 508, 98

---

4. Abrogation is not at issue in this case. The Fourteenth Amendment does not by its own force override the States' Eleventh Amendment immunity, *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Jagnandan v. Giles,* 538 F.2d 1166, 1184 (5th Cir.1976), nor did Congress abrogate that immunity when it enacted 42 U.S.C. § 1983, *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979); *Zatler v. Wainwright,* 802 F.2d 397, 400 (11th Cir.1986). Dr. Schopler does not contend that anything in RICO or the Sherman Act supersedes the Eleventh Amendment's jurisdictional bar.

5. Subsection 16 provides in full:
No provision of this section, or of any other section of the Florida Statutes, whether read

separately or in conjunction with any other provision, shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court. This subsection shall not be construed to mean that the state has at any time previously waived, by implication, its immunity, or that of any of its agencies, from suit in federal court through any statute in existence prior to June 24, 1984.

Fla.Stat. § 768.28(16).

S.Ct. 2894, 2911–12, 57 L.Ed.2d 895 (1978). Whether an official receives absolute or only qualified immunity depends on the function performed by the individual. *Nixon*, 457 U.S. at 746, 102 S.Ct. at 2699, *Butz*, 438 U.S. at 511–12, 98 S.Ct. at 2913–14 (1978). Officials who perform judicial, prosecutorial, or legislative functions traditionally have been afforded absolute immunity from suit. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (judges); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutors); *Lake Country Estates, Inc. v. Tahoe Reg. Plan.*, 440 U.S. 391, 403, 99 S.Ct. 1171, 1178, 59 L.Ed.2d 401 (1979) (legislators).

■ The Board members contend that they are entitled to absolute quasi-judicial immunity from liability for taking disciplinary action against Dr. Schopler, and absolute quasi-legislative immunity from liability for promulgating rules against advertising. Even if we assume that the Board members are absolutely immune when they exercise prosecutorial, judicial, and legislative discretion, *see Horwitz v. State Bd. of Medical Examiners*, 822 F.2d 1508, 1515 (10th Cir.1987); *but see Manion v. Michigan Bd. of Medicine*, 765 F.2d 590, 596 (6th Cir.1985), that immunity would not extend to conduct occurring outside the performance of these functions. *See Marx*, 855 F.2d at 789 & n. 10; *Rich v. Dollar*, 841 F.2d 1558, 1592 (11th Cir.1988); *Marrero v. City of Hialeah*, 625 F.2d 499, 510 (5th Cir.1980). Here, Dr. Schopler alleges that Board members made false, defamatory statements to his colleagues, associates, employees and patients. Dr. Schopler also contends that his associates and employees were harassed and threatened, and that his patients were discouraged from using his prepaid dental plan. Because these alleged misdeeds did not occur in the performance of Board duties, they would fall outside the scope of any absolute immunity the Board members might enjoy. *Id.* Thus, we cannot say that the Board members are absolutely immune from suit as a matter of law.

■ In the alternative, the individual appellants contend that they are entitled to qualified "good faith" immunity. When government officials act within the scope of their discretionary authority, a plaintiff seeking to impose liability must establish the absence of objective good faith. *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982); *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983). In order to meet this requirement, a plaintiff must demonstrate that the official's alleged misconduct was "objectively unreasonable" in that it violated clearly established law. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Zeigler*, 716 F.2d at 849. In the case before us, even if we assume that the alleged defamatory statements were made in the exercise of legitimate discretionary authority, Dr. Schopler has alleged facts sufficient to demonstrate that the statements were objectively unreasonable. Under the circumstances presented by the plaintiff's complaint, government officials accused of wrongdoing cannot prevail on summary judgment based upon good faith immunity. Because the individual defendants cannot claim immunity from these allegations, they are not entitled to avoid further litigation as a matter of law.

## IV. DISPOSITION

The DPR and the Board are entitled to Eleventh Amendment immunity from suit in federal court. Accordingly, the district court's order denying their motion to dismiss is REVERSED. The individual appellants, however, are not entitled to absolute, qualified, or Eleventh Amendment immunity and must stand trial. To this extent, the district court's order denying their motion to dismiss is AFFIRMED. Our conclusion that the individual appellants must stand trial exhausts this court's jurisdiction to hear their appeal. Consequently, appellants' claims of partial immunity are DISMISSED for want of appellate jurisdiction.

It is so ordered.