[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10162

_____

LANGSTON AUSTIN,
On behalf of themselves and all others similarly situated,
ERNEST FULLER, III,
On behalf of themselves and all others similarly situated,

Plaintiffs-Appellants,

*versus*

GLYNN COUNTY, GEORGIA,
E. NEAL JUMP,
Individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 2:20-cv-00073-LGW-BWC

_____

Before WILLIAM PRYOR, Chief Judge, MARCUS, Circuit Judge, and MIZELLE,[*] District Judge.

MIZELLE, District Judge:

This appeal turns on whether Sheriff E. Neal Jump of Glynn County, Georgia, and other sheriffs like him, act as arms of the State of Georgia when making compensation decisions for their employees. Under our precedent, the answer is yes. Because Sheriff Jump is entitled to Eleventh Amendment immunity when performing that function, we affirm the district court's denial of leave to amend and subsequent dismissal of the amended complaint.

## I. BACKGROUND

Langston Austin and Ernest Fuller III worked as detention officers for Glynn County under Sheriff Jump's supervision. Their duties included maintaining order in Glynn County jails and prisons, supervising inmate activities, inspecting facilities, searching inmates for contraband, reporting on inmate conduct, and escorting and transporting inmates. Although it is unclear from the record whether the Officers are formally deputy sheriffs, *see Manders v. Lee*,

---

[*] Honorable Kathryn Kimball Mizelle, United States District Judge for the Middle District of Florida, sitting by designation.

338 F.3d 1304, 1311 n.14 (11th Cir. 2003) (en banc) (explaining that Georgia "[s]heriffs also may appoint persons to serve as jailers who are not deputy sheriffs"), it is undisputed that they are at minimum direct employees of Sheriff Jump, in his official capacity, akin to deputies.

The Officers brought a Fair Labor Standards Act (FLSA) collective action alleging that the County "illegally calculated [their] and other [d]etention [o]fficers' overtime wages." The County moved to dismiss for failure to state a claim. In response, the Officers amended their complaint to include Sheriff Jump in his individual capacity. The County and Sheriff Jump then moved to dismiss the amended complaint for lack of subject-matter jurisdiction and for failure to state a claim, arguing that neither defendant was the Officers' employer under the FLSA.

With our precedent against them about who qualified as an employer under the FLSA, the Officers moved for leave to file a second amended complaint to add Sheriff Jump, in his official capacity, as a defendant. The district court denied the motion, reasoning that amendment would be futile because Sheriff Jump was entitled to Eleventh Amendment immunity in his official capacity. The district court then dismissed the amended complaint and entered final judgment against the Officers because neither the County nor the Sheriff, in his individual capacity, were "employers" under the FLSA. The Officers timely appealed.

## II. STANDARDS OF REVIEW

Each issue raised in this appeal receives *de novo* review. We review dismissals for failure to state a claim *de novo*, accepting all factual allegations as true and considering them in the light most favorable to the plaintiff. *Blevins v. Aksut*, 849 F.3d 1016, 1018–19 (11th Cir. 2017). We also review rulings regarding Eleventh Amendment immunity and statutory interpretation *de novo*. *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1199 (11th Cir. 2016); *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1303 (11th Cir. 2005). And we review *de novo* a determination that a particular amendment to a complaint would be futile. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (per curiam).

## III. DISCUSSION

The FLSA requires that employers engaged in interstate commerce meet minimum labor standards and working conditions, including paying covered employees a minimum wage and overtime. 29 U.S.C. §§ 202, 206, 207; *see Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011). If an employer fails to pay required wages, the FLSA provides employees a private cause of action to collect those unpaid wages. *See* 29 U.S.C. § 216(b). But the FLSA allows suits against "employers" only as defined by the Act. *Id.* § 203(d). Moreover, the Eleventh Amendment bars FLSA actions against arms of the State absent consent. *See Alden v. Maine*, 527 U.S. 706, 712 (1999); *Manders*, 338 F.3d at 1308–09.

The Officers advance three arguments—none are meritorious. The Officers first urge us to overturn Eleventh Circuit precedent holding that public officials, in their individual capacities, are not their subordinates' "employers" under the FLSA. Second, the Officers argue that the district court was wrong to conclude that a Georgia sheriff, in his official capacity, is entitled to Eleventh Amendment immunity when making compensation decisions regarding his employees. Finally, the Officers argue that, even if Sheriff Jump was entitled to Eleventh Amendment immunity, Georgia has waived that immunity in federal court. We explain in turn why each argument fails.

### A. Sheriff Jump, in his Individual Capacity, is Not an "Employer" under the FLSA

The district court correctly dismissed the Officers' complaint against Sheriff Jump in his individual capacity because he is not an "employer" under the FLSA. *See Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995) (holding that an Alabama sheriff was not an employer in his individual capacity under the Equal Pay Act); *Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999) ("The Equal Pay Act is simply an extension of the FLSA and incorporates the FLSA's definition of 'employer.'"). Under the FLSA, an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Our precedent holds that a sheriff acting in his individual capacity has "no control over [the plaintiff's] employment and does not qualify as [the plaintiff's] employer." *Welch*, 57 F.3d at 1011; *Wascura*, 169 F.3d at 686 ("*Welch* establishes . . . that a public official sued in his

individual capacity is not an 'employer' subject to individual liability under the FLSA.").

The Officers argue that other circuits disagree. So be it. Our precedent controls, and we remain impotent as a panel to deviate from it. *Wascura*, 169 F.3d at 687 ("[W]e are bound by the *Welch* decision regardless of whether we agree with it."); *Thompson v. Alabama*, 65 F.4th 1288, 1301 (11th Cir. 2023) ("Later panels must faithfully follow the first panel's ruling even when convinced the earlier panel is wrong." (citations and quotations omitted)).

In sum, because Sheriff Jump, in his individual capacity, is not the Officers' "employer" under the FLSA, we affirm the district court's dismissal of the Officers' amended complaint on that ground.

Two peripheral points to note. First, although the Officers' amended complaint named the County as a defendant, the Officers have not argued on appeal that the district court erred in concluding that the County was not the Officers' employer under the FLSA. Thus, the Officers have forfeited that issue. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground."). Second, Sheriff Jump and the County at times before the district court framed the "employer" question in terms of subject-matter jurisdiction. That is likely on account of our holding in *Wascura* that "where a defendant in an FMLA suit does not meet the statutory

definition of 'employer,' there is no federal subject matter jurisdiction over the claim against that defendant." 169 F.3d at 685. But although *Wascura* drew on *Welch*'s analysis of the FLSA to interpret the FMLA, *Wascura* did not backfill its jurisdictional holding on the FMLA into the FLSA.

### B. *Sheriff Jump is Entitled to Immunity under the Eleventh Amendment when Making Compensation Decisions for Employees*

The district court denied the motion to amend to include Sheriff Jump in his official capacity, concluding that Sheriff Jump would be entitled to Eleventh Amendment immunity when making compensation decisions for his employees. We agree with the district court.

"The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials" when they act as "an arm of the State." *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Whether an official is an "arm of the State" "depends, at least in part, upon the nature of the entity created by state law." *Id.*; *see also Manders*, 338 F.3d at 1308 ("To receive Eleventh Amendment immunity, a defendant . . . need only be acting as an 'arm of the State,' which includes agents and instrumentalities of the State."); *cf. Biden v. Nebraska*, 143 S. Ct. 2355, 2366–68 (2023) (explaining that, in the standing context, MOHELA was "[b]y law and function . . . an instrumentality of Missouri"). For over twenty years, our Court has applied a four-factor test to determine whether public officials act as arms of the State for purposes of the Eleventh Amendment: "(1) how state law defines the entity; (2)

what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders*, 338 F.3d at 1309; *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1231 (11th Cir. 2000).

We keep in mind, though, that entities and officials act as an "arm of the State" by "carrying out a particular function." *Manders*, 338 F.3d at 1309. Therefore, courts applying the *Manders* factors must engage in a "function-by-function inquiry" while remaining vigilant that the "key question" is not "what powers sheriffs have, but *for whom* sheriffs exercise that power." *Pellitteri v. Prine*, 776 F.3d 777, 781–82 (11th Cir. 2015) (alterations adopted and quotations omitted). We have previously held that a Georgia sheriff acts as an arm of the State when making personnel decisions, *see id.* at 783, and when promulgating policies and procedures governing conditions of confinement, *Andrews v. Biggers*, 996 F.3d 1235, 1236 (11th Cir. 2021). This appeal requires us to decide whether compensation decisions by Georgia sheriffs are likewise acts of the State. For the following reasons, we hold that they are.

### 1. How State Law Defines the Entity

We first examine how Georgia law defines the entity and the authority to engage in the particular function at issue. *Manders*, 338 F.3d at 1309, 1319–20. The district court concluded that compensation is an "employee-related decision[]" that constitutes a State function under *Pellitteri*. This appeal differs from *Pellitteri*, which addressed personnel decisions distinct from the compensation-

setting functions present here. But we agree that the first *Manders* factor weighs in favor of immunity, if for a slightly different reason than the district court articulated.

In *Manders*, we distilled "the essential governmental nature" of Georgia sheriff's offices to be enforcement of the law on behalf of the State and the performance of "specific statutory duties, directly assigned by the State, in law enforcement, in state courts, and in corrections." 338 F.3d at 1319. As such, "sheriffs in Georgia derive their power and duties from the State, are controlled by the State, and counties cannot, and do not, delegate any law enforcement power or duties to sheriffs." *Pellitteri*, 776 F.3d at 780 (quoting *Manders*, 338 F.3d at 1313). To be sure, "[t]he sheriff's office is not a division or subunit of [the] [c]ounty or its county governing body," but is "a separate constitutional office independent from [the] [c]ounty and its governing body." *Manders*, 338 F.3d at 1310 (citing Ga. Const. art. IX, § II, ¶ I(c)(1)). Thus, sheriffs constitute "county officers" only in the sense that they ordinarily possess limited geographic jurisdiction and are elected by county voters. *Pellitteri*, 776 F.3d at 780; *see also* Ga. Const. art. IX, § I, ¶ III(a) (labeling sheriffs "county officers").

As evidence of sheriff's offices' independence from counties, the Georgia Constitution prohibits a county from taking any "[a]ction affecting any elective county office, the salaries thereof, or the personnel thereof, except the personnel subject to the jurisdiction of the county governing authority." Ga. Const. art. IX, § II, ¶ I(c)(1). And the Georgia Supreme Court has held that, although

the Georgia Constitution permits "[t]he governing authority of each county" to "fix the salary, compensation, and expenses of those employed by such governing authority," *id.* ¶ I(f), setting salaries for the sheriff or sheriff's office personnel is "not subject to the jurisdiction of the county governing authority," *Warren v. Walton*, 202 S.E.2d 405, 409 (Ga. 1973).

How Georgia law defines Sheriff Jump's office—in particular, his authority over the salaries of his employees—favors viewing Sheriff Jump as "an arm of the State" when making compensation determinations. Here, the Officers assist Sheriff Jump in carrying out his statutorily assigned corrections duties on behalf of the State and are personnel working under Sheriff Jump's supervision. Because compensation decisions for overtime pay constitute "[a]ction affecting [an] elective county office, the salaries thereof, or the personnel thereof," the County lacks authority to directly interfere in those decisions. *Pellitteri*, 776 F.3d at 780 (quotations omitted). Thus, Georgia law indicates that Sheriff Jump acts on behalf of the State—not the County—when making compensation decisions for his employees. *See* Ga. Const. art. IX, § II, ¶ I(c)(1). The first *Manders* factor weighs in favor of immunity.

### 2. Degree of Control the State Maintains

We next analyze the degree of control that Georgia "maintains over the entity." *Manders*, 338 F.3d at 1309, 1320–22. The district court concluded that the second *Manders* factor weighed in favor of immunity because Georgia exercises substantial control over the hiring and firing of deputy sheriffs and because sheriffs exercise

those personnel-related powers on behalf of the State. Again, we agree with the district court's conclusion but for a slightly different reason.

We explained in *Pellitteri* that "the State of Georgia exercises substantial control over a sheriff's personnel decisions." 776 F.3d at 781. The same is true for a sheriff's compensation-related decisions concerning his employees. Although the County approves Sheriff Jump's budget and pays his employees' salaries, Georgia limits how much a county can restrict a sheriff's ability to pay his employees. While a county "may remove *some* funds from a sheriff's budget," it may not remove "*all* funds." *Chaffin v. Calhoun*, 415 S.E.2d 906, 908 (Ga. 1992) (emphasis in original). Instead, county commissioners are "under a duty to adopt a budget making reasonable and adequate provision for the personnel and equipment necessary to enable the sheriff to perform his duties of enforcing the law and preserving the peace." *Id.* at 907–08 (quoting *Wolfe v. Huff*, 210 S.E.2d 699, 700 (Ga. 1974)). Neither can the County fix Sheriff Jump's, or his employees', salaries. *See Warren*, 202 S.E.2d at 409; *Pellitteri*, 776 F.3d at 782. Instead, that aspect of the power of the purse lies with Sheriff Jump, who exercises his authority on behalf of the State.

Moreover, the Governor of Georgia and the General Assembly have the power to discipline sheriffs. *Manders*, 338 F.3d at 1321 ("[T]he Governor has broad investigation and suspension powers regarding any misconduct by a sheriff in the performance of any of his duties." (citation and footnote omitted)). Georgia law provides specific procedures for the Governor to investigate and discipline

sheriffs for any alleged misconduct. *See* Ga. Code § 15-16-26. Counties, by contrast, "do[] not, and cannot, direct the [s]heriff" on "how to hire, train, supervise, or discipline his deputies, what policies to adopt, or how to operate his office." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1347 (11th Cir. 2003). The County lacks the authority to discipline Sheriff Jump for the way that he manages his office because Georgia maintains control over sheriff discipline. And we must remember that a Georgia sheriff pays (or allegedly underpays at times) employees, including detention officers, to assist him in executing his statutory duties *for the State*, not for a county. Thus, when a Georgia sheriff makes compensation decisions for his employees, he remains under the control of the State in doing so. The second *Manders* factor weighs in favor of immunity.

### 3. Where the Entity Derives its Funds

We next consider where Sheriff Jump derives the funds used to compensate his employees. *Manders*, 338 F.3d at 1309, 1323–24. The district court concluded that the third *Manders* factor weighed in favor of immunity because Georgia requires the County to set Sheriff Jump's budget according to the State's specifications and the County cannot dictate how Sheriff Jump uses that budget. We agree for both reasons.

First, although the County pays the salaries of Sheriff Jump's employees, Georgia law mandates that the County do so. Georgia requires that expenses for deputies "shall" come from funds separate from the funds that a county must spend on a sheriff's salary. Ga. Code § 15-16-20(c). In addition, the County must provide the

Sheriff's Office with a "reasonable and adequate" budget to carry out Sheriff Jump's legal duties. *Chaffin*, 415 S.E.2d at 907–08; *see also Wolfe*, 210 S.E.2d at 700.

Second, although the County has the authority to approve or deny Sheriff Jump's budget, it cannot dictate *how* Sheriff Jump uses the funds provided for his office. *See Bd. of Comm'rs of Randolph Cnty. v. Wilson*, 396 S.E.2d 903, 904–05 (Ga. 1990); *Pellitteri*, 776 F.3d at 782. Thus, when Sheriff Jump designates portions of his budget for compensating employees like the Officers, he is exercising his authority for the State and operating with substantial independence from the County.

The Officers reply that, at the end of the day, the funds still primarily originate with the County. But that argument merely restates the conclusion of our unpublished decision in *Keene v. Prine*, 477 F. App'x 575, 578–79 (11th Cir. 2012), one that we expressly rejected in *Pellitteri*, 776 F.3d at 782 ("In *Keene*, we found that th[e third] factor weighed against immunity because the County is clearly the principal source of funding for the Sheriff's Office, including for personnel expenditures. Here again, we recognize that our prior unpublished opinion is inconsistent with this Court's published precedent." (alterations and quotations omitted)). Just as it did in *Manders* and *Pellitteri*, the third factor weighs in favor of immunity. *See id.* at 783; *Manders*, 338 F.3d at 1324.

### 4. Liability and Payment of Adverse Judgments

Finally, we consider who pays any adverse judgment against Sheriff Jump. *Manders*, 338 F.3d at 1309, 1324–28. The district court

concluded that the fourth *Manders* factor weighs against immunity because the County remains obligated to pay any liabilities incurred by Sheriff Jump. We agree "to the extent that the [S]tate treasury will be spared here from paying any adverse judgment." *Pellitteri*, 776 F.3d at 783. But because this factor is "certainly not necessary for a finding of immunity" and the first three factors weigh in favor of immunity, we hold that a Georgia sheriff acts as an arm of the State when making compensation decisions for his employees, including detention officers like Austin and Fuller. *Id.* & n.2; *see also Manders*, 338 F.3d at 1328 ("The State's 'integrity' is not limited to who foots the bill.").

Thus, Sheriff Jump, in his official capacity, is entitled to sovereign immunity under the Eleventh Amendment. Any amendment naming him in his official capacity would have been futile.

### C. Georgia Has Not Waived Sovereign Immunity with Respect to the Officers' FLSA Claims

The Officers argue that even if Sheriff Jump acts on behalf of the State when making compensation decisions regarding his employees, Georgia has waived Eleventh Amendment immunity for employment suits. The Officers arrive at this conclusion by contending that all employment disputes sound in breach-of-contract and that the State has waived immunity for breach-of-contract claims. *See* Ga. Const. art. I, § II, ¶ IX(c). But the "State's consent to suit must be 'unequivocally expressed' in the text." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). No such unequivocal

expression exists, and certainly not as to FLSA claims like the Officers'. Moreover, the Georgia Constitution waives the State's immunity from suit for breach-of-contract claims in Georgia's courts, not in *federal* court.

As a threshold matter, Georgia has not expressly waived its sovereign immunity for claims under the FLSA. The standard for waiver of Eleventh Amendment immunity is an exacting one. A waiver "must employ language that is either explicit or else admits of no other reasonable interpretation." *Schopler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990). The Officers never attempted to bring a breach-of-contract claim and alleged only federal question jurisdiction in their complaint. They cannot now transmute the claim that they brought—an FLSA claim for unpaid wages—into a breach-of-contract claim by arguing that the former is "close enough" to trigger Georgia's waiver provision. A state's waiver of sovereign immunity is neither horseshoes nor hand grenades— "close enough" is "not enough." We will not drastically expand Georgia's limited immunity waiver absent an explicit statement in Georgia law.

Even if we were inclined to agree with the Officers as to the general scope of Georgia's sovereign immunity waiver, that waiver would still not apply here because the State must "specify" that it intends "to subject itself to suit in *federal court*." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990) (emphasis in original) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985), *superseded by statute on other grounds as recognized by Lane v.*

*Pena*, 518 U.S. 187, 197–98 (1996)). In other words, "a [s]tate does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999).

Georgia has consented to breach-of-contract suits only in courts of its own creation. Georgia law provides that "[v]enue with respect to any [breach-of-contract] action shall be proper in the Superior Court of Fulton County, Georgia." Ga. Code § 50-21-1(b). The Georgia Constitution further provides that "[n]o waiver of sovereign immunity . . . shall be construed as a waiver of any immunity provided to the [S]tate or its departments, agencies, officers, or employees by the United States Constitution." Ga. Const. art. I, § II, ¶ IX(f). Thus, Georgia "retained its Eleventh Amendment immunity" from suits in federal court for breach-of-contract claims because no statute or constitutional provision "expressly consents to suits in federal court." *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012).

## IV. CONCLUSION

Accordingly, both the district court's denial of the Officers' motion for leave to amend and its ultimate dismissal of the amended complaint are **AFFIRMED**.